UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARISSA JORDAN,<br><br>                      Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>                      Defendant. | CASE NO. 2:25-cr-00105-LK<br><br>ORDER ON MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER |

This matter comes before the Court on Defendant Larissa Jordan's Motion for Review and Revocation of Magistrate Judge's Detention Order. Dkt. No. 13. For the reasons set forth below, the Court denies Ms. Jordan's motion.

## I.   BACKGROUND

On May 21, 2025, Ms. Jordan was indicted for production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). Dkt. No. 14. The Government alleges that Ms. Jordan took a nude photo of her minor child as well as a video while "potty training" the child, that the image and video meet the federal definition of child pornography as defined in 18 U.S.C. § 2256(8), and that she shared the photo and video with an individual on social media. Dkt. No. 1 at 3–4, 7. There was

also evidence that she distributed other sexually explicit material involving minors using the same social media application, engaged in communications with others that involved sexually assaulting children, and solicited images of a father abusing his four children. *Id.* at 8–9.

Ms. Jordan was arrested on April 16, 2025, and held on charges in Snohomish County custody. Dkt. No. 13 at 1. She was transferred to federal custody on May 8, 2025, on which date she had her initial appearance. Dkt. No. 7. The Government moved for detention, arguing that Ms. Jordan presented a flight risk as well as a danger to the community. Dkt. No. 9. On May 12, 2025, Judge Peterson held a detention hearing. Dkt. No. 10. Ms. Jordan proposed that she be released with monitoring and be permitted to reside with her fiancé in Everett, Washington. Dkt. No. 13 at 2. Following interviews with both Ms. Jordan and her fiancé, United States Probation and Pretrial Services recommended that Ms. Jordan be released subject to numerous conditions, including but not limited to location monitoring and prohibitions on contact with the victim and access to any devices capable of connection to the internet. Dkt. No. 11 at 5–7. In ruling on the Government's motion, Judge Peterson found that Ms. Jordan had rebutted the presumption under 18 U.S.C. § 3142(e) that no condition or combination of conditions could reasonably assure her appearance as required and the safety of the community, but concluded nonetheless that "there does not appear to be any condition or combination of conditions that will reasonably address the danger [Ms. Jordan poses] to other persons or the community." Dkt. No. 12 at 2. As such, Judge Peterson ordered Ms. Jordan's continued detention. *Id.*

## II. DISCUSSION

### A. Legal Standard

The Bail Reform Act mandates release of a defendant pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1); *see*

*United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). This requirement reflects the principle that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, "[o]nly in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).

The Government bears the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and it bears the burden of showing that she poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Where, as here, there is probable cause to believe that the defendant committed an offense involving a minor victim in violation of 18 U.S.C. § 2251, there is a rebuttable presumption that detention is appropriate because "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E); *see also Kaley v. United States*, 571 U.S. 320, 329 n.6 (2014) (an indictment determines the existence of probable cause). In order to rebut the presumption against pretrial release, the defendant "must produce evidence that [s]he does not pose a danger to the community or a risk of flight." *United States v. Valenzuela*, No. 12-cr-062-RSL, 2012 WL 1377087, at *2 (W.D. Wash. Apr. 19, 2012). While this presumption initially shifts the burden of production to the defendant, the burden of persuasion always remains with the Government. *Hir*, 517 F.3d at 1086. "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* (citation modified).

If the defendant proffers evidence to rebut the presumption, the Court must then consider four factors to determine whether detention is nonetheless warranted: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or

involves a minor victim"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *see also United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) (a district court must conduct "an individualized evaluation" that is "guided by" these factors). The weight of the evidence against the defendant is the least important of these factors, and the Court may not engage in a pretrial determination of guilt or innocence. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

A district court reviews pretrial detention orders de novo. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). Although the Court conducts its review without deference to Judge Peterson's factual findings, it need not "start over" or proceed as if her decision and findings do not exist. *Id.* at 1193; *see United States v. Carrillo Lopez*, No. MJ20-0020-JCC, 2020 WL 3414674, at *2 (W.D. Wash. June 22, 2020) ("The district court thus reviews the evidence that was before the magistrate judge and any additional evidence proffered by the parties[.]").

**B.  The Section 3142(g) Factors Weigh Against Pretrial Release**

Even assuming without deciding that Ms. Jordan has rebutted the presumption, the Court concludes that no condition or combination of conditions will reasonably assure the safety of the community.

1.  Nature and Circumstances of the Offense

The Bail Reform Act specifically directs courts to consider whether the offense is a crime of violence and whether it involves a minor victim when evaluating the nature and seriousness of the offense charged. 18 U.S.C. § 3142(g)(1). Here, the charged offense is a crime of violence as well as a crime involving a minor victim. 18 U.S.C. § 3156(a)(4)(C) (defining "crime of violence" as "any felony under chapter . . . 110," which includes 18 U.S.C. § 2251). And because the charged

offense "entail[s] the sexual exploitation of children," it is among "the gravest and most serious crimes that a defendant can be charged with." *United States v. Petersen*, No. 17-CR-00259-CRB-1/JD, 2017 WL 2179591, at *4 (N.D. Cal. May 17, 2017); *see also United States v. Super*, No. 3:23-CR-05233-BHS, 2023 WL 5952715, at *3 (W.D. Wash. Sept. 13, 2023) ("Harm caused by sexual abuse and exploitation of minor children is incalculable," and where "the victim is a toddler" who has limited means with which to communicate or act in self-defense, "the offense is particularly difficult to both prevent and discover"). In keeping with its gravity, the charged offense carries severe penalties: a sentence of 15 to 30 years. 18 U.S.C. § 2251(e). The Court finds that this factor weighs heavily in favor of detention.

        2.   <u>Weight of the Evidence</u>

While the weight of the evidence is the least important factor, *see Motamedi*, 767 F.2d at 1408, it too weighs against releasing Ms. Jordan. The complaint provides extensive detail concerning the investigation into Ms. Jordan's digital footprint and devices conducted by the Child Exploitation and Human Trafficking Task Force Officer with the Federal Bureau of Investigation ("FBI"). Dkt. No. 1 at 2–10. In particular, the user information associated with one of Ms. Jordan's social media accounts suggested that it was "actually an advertisement for Child Sexual Abuse Material (CSAM) images of children between the ages of 0 and 4 years." *Id.* at 5, 7. The victim's father acknowledged that "it was conceivable Jordan would have taken . . . a [nude] photo [of their minor child] to sell." *Id.* at 6. And most importantly, Ms. Jordan admitted in a recorded interview with law enforcement that she had taken the image and video that were later found by the FBI to "meet[] the federal definition of child pornography, as defined in 18 U.S.C. 2256(8)," and sent them to an individual with whom she was sexually involved online "when he demanded it." *Id.* at 7. This constitutes considerable evidence that Ms. Jordan committed the crime she is charged with, and the Court accordingly finds that this factor weighs in favor of detention.

ORDER ON MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER - 5

3. History and Characteristics

The third factor requires the Court to consider the "history and characteristics" of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and whether, at the time of the arrest, "the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]" 18 U.S.C. § 3142(g)(3). In evaluating this factor, the Court considers the facts described in the Pretrial Services Report and Supplemental Pretrial Report, Dkt. Nos. 3, 11, as well as the argument at the detention hearing, Dkt. No. 13-1.

Here, Ms. Jordan's history and characteristics ultimately weigh in favor of continued detention. Ms. Jordan has lived in Washington for approximately 14 years, and she appears to have ties to the community given her relationship with her fiancé and coworker, both of whom attended her detention hearing. Dkt. No. 13-1 at 4–5; Dkt. No. 11 at 2. Her parents and siblings live in Ohio and California. *Id.* Ms. Jordan denied having a passport or having ever left the country when interviewed by Pretrial Services, and these assertions were corroborated by her fiancé. Dkt. No. 11 at 3. Until the time of her arrest, she was employed at Big Five for almost two years, although she was apparently "living paycheck to paycheck" in order to support herself, her minor child, and her child's father. *Id.* Her fiancé has offered to serve as her collateral source, and informed Pretrial Services that he would be willing to change the passwords for his devices to prevent Ms. Jordan's access to them, if required. *Id.* at 2. However, the stability of this relationship is unclear at best. Ms. Jordan and her fiancé have been together only 20 months, and the Government represented at the hearing that Ms. Jordan proposed to him while she was in Snohomish County jail. Dkt. No. 11 at 3; Dkt. No. 13-1 at 4. But Ms. Jordan is still married to a man that she separated from seven

years ago, her daughter (the victim) was born four years ago to a different man, and as of May 2025, she was also involved in a romantic relationship with a man she met online who goes by the name of "Panda" (and with whom she shared the explicit images of her daughter). Dkt. No. 11 at 3; Dkt. No. 1 at 7.

Ms. Jordan is suspected of having received and distributed CSAM outside of the incident giving rise to the FBI investigation in this case, and is also alleged to have previously engaged in bestiality with her pets. Dkt. No. 11 at 2. Ms. Johnson was recently charged in Snohomish County with dealing in depictions of minor engaged in sexually explicit conduct, possession of depictions of minor engaged in sexually explicit conduct, sexual exploitation of minor, and animal cruelty with sexual motivation, associated in large part with the conduct underlying her federal charges. *Id.* at 4. The state charges were dismissed by the County shortly after the federal government charged Ms. Jordan in this matter. *Id.*; *see also* Dkt. No. 13-1 at 4. Snohomish County's charges against her former partner, the father of the victim, were still active at the time of Ms. Jordan's detention hearing. *Id.* In terms of substance use, Ms. Jordan admits to consuming marijuana and alcohol daily, including to excess "[d]epending on her needs." Dkt. No. 11 at 4. However, she has not participated in a drug or alcohol treatment program. *Id.*

Based on the above considerations, the Court finds that this factor weighs in favor of continued pretrial detention.

    4. <u>Danger to the Community</u>

Finally, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by Ms. Jordan's release. 18 U.S.C. § 3142(g)(4); *see id.* § 3142(f)(2)(B) (the rules concerning admissibility of evidence in criminal trials do not apply to a pretrial detention hearing); *Gebro*, 948 F.2d at 1121 (dangerousness must be demonstrated by clear and convincing evidence). Here, as with the prior factor, the Court considers the facts described in

the Pretrial Services Report and Supplemental Pretrial Report from Pretrial Services, Dkt. Nos. 3, 11, as well as the argument at the detention hearing, Dkt. No. 13-1.

The evidence suggests that Ms. Jordan abused her position of trust and authority with her minor child to sexually exploit the child. Dkt. No. 1 at 2–10. As noted above, at least one of Ms. Jordan's social media accounts includes a suspected "advertisement for Child Sexual Abuse Material (CSAM) images of children between the ages of 0 and 4 years." *Id.* at 5. And as also noted above, the evidence that Ms. Jordan was involved in child sexual exploitation extends beyond her own child. An ongoing review of Ms. Jordan's social media accounts uncovered communications with others on the topic of sexual abuse of minors, including at least one instance in which Ms. Jordan sent an image to another Kik user "that depicted a young boy between the approximate ages of 7 and 9 performing oral sex on an adult female." *Id.* at 9. In one of her messages on the Kik platform, Ms. Jordan informed another user that "she received that image from . . . a father [] she was communicating with on Kik and Proton mail email account." *Id.* A screenshot of Ms. Jordan's communications with the father, who is being investigated under suspicion of abusing his four children (including his minor daughter), reads: "homeschooling helps. They know that if they said anything it would all stop. Tell us more about ur daughter and what u hope to do together some day. If u do I'll show u some bad stuff too." *Id.* The Government has informed Pretrial services that, on the basis of communications like this one, it "has concerns [Ms. Jordan] could alert other suspects that could result in those suspects destroying evidence or tampering with witnesses/victims" in the event she is released to the community. Dkt. No. 11 at 2. The Court notes that Ms. Jordan deleted the social media account she used to send the image and video to "Panda" after the electronic service provider submitted a CyberTip to the National Center for Missing and Exploited Children. Dkt. No. 1 at 8.

This history of conduct shows that Ms. Jordan's creation, solicitation, and sharing of CSAM posed a very real danger to her child and the community before her arrest. Given Ms. Jordan's demonstrated sexualized interest in minors, the Court concludes that the danger continues as long as Ms. Jordan is released into the community. As discussed above, the crime charged against Ms. Jordan is not only a crime of violence but also a crime against a minor—a type of victim that is especially vulnerable. Ms. Jordan's prior conduct indicates that she actively shared and received sexually explicit material featuring her own and others' children, and appears to have been making plans to continue sexual exploitation of her child in the future. *See* Dkt. No. 1 at 9.

The Court is unconvinced that any special conditions could adequately mitigate the danger posed by Ms. Jordan's potential access to minor children and to electronic devices. Although Pretrial Services proposes that she be subject to location monitoring based on Active Global Positioning Satellite technology, Dkt. No. 11 at 7, location monitoring cannot enable Pretrial Services to determine when or whether Ms. Jordan is in proximity to minors. Ms. Jordan's proposed residence puts her in proximity to a very large number of places where minors may congregate: Mulima's Childcare is 0.2 miles south of the apartment complex, World Kids School Everett is 0.6 miles south of the address, Everett Special Education is 0.3 miles east of the apartment, the Preschool at Forest Park is one mile northwest from the residence, and Emma Yule Park is 0.3 miles southeast of the apartment. *Id.* at 2. Even if Ms. Jordan were placed on home detention, she would be permitted to leave the apartment for any number of reasons, including employment, religious services, medical appointments, legal reasons, or as otherwise approved by Pretrial Services. Ms. Jordan's fiancé has a full-time job, limiting his ability to supervise her. *See* Dkt. No. 13-1 at 5. And though the proposed conditions bar Ms. Jordan from possessing computers or accessing the internet and her fiancé agrees to change the passwords on the various devices, Dkt. No. 11 at 2, 6, Pretrial Services will have limited ability to ensure compliance with that

condition in the proposed residence. As the Ninth Circuit discussed in *Hir*, 517 F.3d at 1092–93, it is extremely difficult to control a defendant's access to computers or the internet. *See also United States v. Aiad-Toss*, No. 4:19-CR-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) (although location monitoring "may offer useful information about where [the defendant] is, it would provide little useful information about what he is doing," and "[t]he ready accessibility of smart phones and digital communication devices would make it all too easy for him to commit the same types of crime(s) that he is accused of committing with other young, vulnerable girls"); *United States v. Yoeun*, CR19-5148-BHS, Dkt. No. 11 at 6 (W.D. Wash. Mar. 13, 2019) ("Even with stringent conditions such as electronic home monitoring, it would not be possible to control the defendant's access to the internet[.]"); *United States v. Santiago-Muniz*, No. 3:17-CR-326, 2017 WL 6028347, at *3 (M.D. Pa. Dec. 5, 2017) ("Preventing th[e] type of highly predatory and addictive sexual behavior which may be completed in relative secrecy with any number of devices that can connect to the internet is simply beyond the capacity of pretrial services to effectively monitor."). Even with stringent conditions such as electronic home monitoring, it would not be possible to control Ms. Jordan's access to the internet when electronic devices can be found easily.

Considering all of the above, the Court finds that the Government has met its burden to show by clear and convincing evidence that Ms. Jordan is a danger to the community, and that no condition or combination of conditions will reasonably assure the safety of others and the community if she is released.

### III.  CONCLUSION

For the reasons outlined above, the Court denies Ms. Jordan's motion. Dkt. No. 13.

Dated this 3rd day of July, 2025.

*Lauren King*
Lauren King
United States District Judge