THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

         Plaintiff,

         v.

LARISSA JORDAN,

         Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. CR25-105-LK

MS. JORDAN'S SENTENCING
MEMORANDUM

## I.    INTRODUCTION

This is a very unusual case. Over a two-week period, while drinking a bottle of liquor daily, Ms. Jordan produced and shared a sexual image of her child and also shared other Child Sex Abuse Material ("CSAM"). She did this in order to please the men with whom she was chatting online, not because she has a sexual interest in children herself. Ms. Jordan's conduct in this case is consistent with her own childhood where she suffered abuse, neglect, and repeated sexual victimization. Her pathological need to please men distinguishes this case from nearly all other enticement cases. While Ms. Jordan's tragic background and mental health issues do not excuse her conduct, they do provide important context and mitigation in this case. For these reasons, the Court should follow the joint recommendation for a ten-year sentence, despite a higher advisory Guideline range.

Ms. Jordan makes no excuses for her conduct. She is heartbroken that she inflicted harm similar to that which was inflicted upon her as a child. PSR ¶ 18. She

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 1

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

feels "unfathomable sorrow" for hurting her own child in this way and only wants the best childhood for her daughter. *Id*.

## II.     DEFENSE SENTENCING EXHIBITS

**Exhibit 1**. Report of Forensic Psychological Evaluation by Karen Franklin, Ph.D., dated October 17, 2025. This evaluation describes Ms. Jordan's history of trauma, her alcoholism, and the underlying motivations for the offense conduct. Dr. Franklin concludes that Ms. Jordan presents a "very low" risk of sexual recidivism and is amenable to treatment in the community.

**Exhibit 2**. Clinical Assessment by Dan Knoepfler, certified sex offender treatment provider,[1] dated December 30, 2025. This evaluation confirms Dr. Franklin's opinion that Ms. Jordan's sexual misconduct was motivated by pleasing men rather than a sexual deviance, and that Ms. Jordan presents a low risk of recidivism.

**Exhibit 3**. Ms. Jordan's letter to the Court expressing her regret and sorrow for her conduct, particularly the impact it will have on her daughter.

**Exhibit 4**. Letters from family and friends written in support of Ms. Jordan, demonstrating that Ms. Jordan is capable of forming strong, prosocial relationships in the community.

## III.     A SENTENCE LONGER THAN TEN YEARS IS NOT NECESSARY TO ACHIEVE THE GOALS OF SENTENCING.

The Supreme Court has long honored this Court's "discretion" in sentencing, recognizing "every convicted person as an individual and every case as a unique study in the human failings." *Koon v. United States*, 518 U.S. 81, 113 (1996). The Sentencing Guidelines are not mandatory but rather advisory and this Court must impose a term of

---

[1] Mr. Knoepfler is one of the few sex offender treatment providers that contracts with U.S. Probation and Pretrial Services in this district to provide sex offender treatment to individuals on supervised release. He was retained by the defense at the suggestion of Ms. Gregson, the AUSA in this case. Due to health issues, Mr. Knoepfler was unable to see Ms. Jordan at FDC SeaTac.

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 2

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

imprisonment that that is "sufficient, but not greater than necessary" to meet the goals of sentencing as outlined in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 245 (2005).

      **A.      Ms. Jordan's tragic history of sexual abuse and neglect support the joint recommendation of ten years of imprisonment.**

As noted in the Probation Department Recommendation, "Ms. Jordan's trauma began the day she was born." Probation Rec. at 6. Indeed, Ms. Jordan's "life began as the product of rape." Ex. 1 at 3. Her mother was raped at age 14 and gave birth to Ms. Jordan when she was 15 years old. *Id*. Her mother also suffered from "crippling depression" and Ms. Jordan was largely raised by her grandparents. *Id*. However, this was far from idyllic; her grandmother was an alcoholic who struggled with depression and her grandfather was a crack cocaine addict who sexually abused Ms. Jordan and other family members. *Id*.

Growing up, Ms. Jordan was subjected physical and emotional abuse by her mother, an uncle, and her biological father. *Id*. Ms. Jordan's biological father, despite raping her mother at age 14, was allowed back into the family unit on an intermittent basis. *Id*. Her mother's unhealthy relationship with her father served as a model for Ms. Jordan; both of them valued romantic partners over their own safety and well-being. This pattern is certainly evident in Ms. Jordan's conduct in this case.

At age 4, Ms. Jordan was kidnapped from a hotel room and molested over the course of hours before police recovered her in the hotel room next door. *Id*. The man was convicted and sentenced to a lengthy prison term. As outlined by Dr. Franklin, this incident had a profound impact on Ms. Jordan's sexual development. Ex. 1 at 4.

Growing up with her mother and grandparents, Ms. Jordan's home life was miserable. Her mother constantly insulted her and expressed regret that Ms. Jordan was ever born. Ex. 1 at 3. Ms. Jordan witnessed domestic violence and was physically

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

abused. *Id*. School was not an escape from the abuse; there she was "ostracized and bullied." *Id*. Eventually, she had difficulty getting up in the morning to attend school. She dropped out early in high school and she does not have a diploma or GED. PSR ¶ 66.

As a teen Ms. Jordan continued to be sexually victimized. At age 13, her biological father groped her breasts. PSR ¶ 44. At age 15, she started communicating with men online, trying to seek connection. *Id*. She engaged with men sexually in chat rooms and started exploring role playing where she assumed a subservient role, achieving satisfaction by pleasing the men in the chats. Ex. 1 at 5. At age 16, an adult male she met online coerced her into meeting him at a park. PSR ¶ 44. The man took her to a residence where she was sexually assaulted by multiple men. *Id*. For this, her peers mocked her, so she dropped out of high school. *Id*. By this time she was already engaging in self-mutilation, but this incident led to a suicide attempt where she overdosed on muscle relaxers and was treated at a hospital emergency room. Ex. 1 at 4.

The Probation Department and Dr. Franklin scored Ms. Jordan extraordinarily high on different versions of the Adverse Childhood Experiences ("ACEs") Questionnaire. Ms. Jordan endorsed 13 of 14 items used by Dr. Franklin, and 9 of 10 items used by the Probation Department. Ex. 1 at 3; PSR ¶ 59–61. This suggests a strong likelihood of "at least some functional impairment as an adult." Ex. 1 at 3. Given her childhood experiences, it is not surprising that Ms. Jordan was willing to do just about anything to seek affirmation and attention from others.

Ms. Jordan met her husband, Michael Peppard, online when she was 17 years old and he was 24 years old. PSR ¶ 45. She flew from her home in Ohio to live with Mr. Peppard in Washington. They married three months after she turned 18 years old. *Id*. She and Mr. Peppard lived with his parents in Everett. Ms. Jordan stayed home while he worked. She reported that on at least one occasion Mr. Peppard raped her.

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 4

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

Nonetheless, she describes him as "kind, sweet [and] giving." Ex. 4. Eventually, she and Mr. Peppard decided to have an open marriage, and she started seeing Jon Whitwall.

Eventually, Ms. Jordan got pregnant by Mr. Whitwall, and the two moved in together in Everett. PSR ¶ 46–47. Their daughter, identified as MV1 in this case, is currently five years old and in foster care. PSR ¶ 48. Throughout Ms. Jordan's adulthood, she was dependent emotionally and financially on her male partners. Eventually, at age 27, she started working mostly part-time retail jobs.

Ms. Jordan's relationship with Mr. Whitwall was tumultuous with physical and verbal abuse. PSR ¶ 47 Ms. Jordan's mother described Mr. Whitwall as "controlling." PSR ¶ 52. Due to the stress of her difficult relationship with Mr. Whitwall and her post-partum depression, Ms. Jordan started drinking more heavily, eventually consuming a 750 ml bottle of hard liquor every day. PSR ¶¶ 53, 62. Her extreme drinking was corroborated by others as well as her medical and counseling records. Ex. 1 at 6.

Ms. Jordan first sought mental health treatment at age 13 when her father finally left the family. Ex. 1 at 6. She next sought counseling at Community Health Center of Snohomish County where she was initially diagnosed with post-traumatic stress disorder, bipolar disorder, major depression, ADHD, dissociative disorder and generalized anxiety disorder. Ex. 1 at 7. After the birth of her child, she was diagnosed with borderline personality disorder. *Id*. Long before her involvement in this offense, her counselor noted that Ms. Jordan was more invested in exploring "her partner's needs and opinions than in addressing her own," which the therapist noted was consistent with her "trauma history, poor self-image and low self-esteem." *Id*.

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

### B. WHILE THE OFFENSE CONDUCT IS VERY SERIOUS, THE UNDERLYING REASONS FOR MS. JORDAN'S CONDUCT ARE MITIGATING.

Ms. Jordan agrees that this is a very serious offense and a significant custodial sentence is warranted. However, a ten-year prison term sufficient reflects the unique circumstances of this particular offense.

Both Dr. Franklin and Dan Knoepfler agree that Ms. Jordan's offense conduct was not motivated by sexual deviancy, but instead explained by her mental health profile and alcoholism. Ex. 1 at 15; Ex. 2 at 8. Multiple data points corroborate Ms. Jordan's assertion that she is not sexually attracted to children. She passed a polygraph where she denied sexual activity with minors apart from the photo she took of her daughter, and she denied chatting with or seeking out minors. Ex. 1 at 14. Despite searches of her computer and phone, there was no evidence she was communicating with minors online, and there was a relatively small amount of child pornography on her devices. *Id*. The only CSAM on her devices was the photo she took of her daughter and images that men sent to her during their sexualized chats.

Ms. Jordan's offense conduct took place during the first two weeks of April 2025, a very limited period of time. All of the messages related to CSAM and described in the discovery took place during this limited term.

Ms. Jordan's involvement in the offense conduct was motivated by her desire to please men rather than a sexual interest in children. Given her history of trauma and abandonment, it is not surprising she has an unhealthy desire to please others sexually. Women with borderline personality disorder have "an intense and pathologic fear of abandonment." Ex. 1 at 15. As Dr. Franklin opined, rather than sexual deviance, "Ms. Jordan's offending is best explained by a convergence of factors primarily consisting of clinical depression, acute alcohol intoxication, compulsive sexuality, online disinhibition and a pathological fear of abandonment." *Id*.

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

**C.      A sentence longer than ten years is unnecessary to protect the community.**

Dr. Franklin and Dan Knopfler concluded that Ms. Jordan presents a low risk of reoffending. Ex. 1 at 16; Ex. 2 at 9. She is 33 years old and has no prior criminal history.

As outlined by Dr. Franklin, it is rare for female sex offenders to commit another sexual offense. Ex. 1 at 15 ("Only about one out of 100 women will fall into the category of a sexual recidivist."). Dr. Franklin concludes that Ms. Jordan's risk of sexual recidivism is even lower than the 1% base-rate for two reasons: (1) there is no indication she is sexually attracted to children, and (2) two factors that contributed to her offense conduct, i.e., clinical depression and alcohol abuse, are readily amenable to treatment. *Id*. at 16. Ms. Jordan will be under supervision by the Probation Department for a very long time. While under supervision, Ms. Jordan will be subject to highly restrictive lifestyle constraints, computer monitoring, treatment, and drug/alcohol testing. All of these conditions will make it extremely unlikely that she will reoffend. In her report, Dr. Franklin concludes:

> Ms. Jordan's CSEM offending during a two-week window in April of 2024 owes to a combination of heavy drinking, clinical depression, compulsive sexuality, online disinhibition and psychological traits consistent with borderline personality disorder. Her risk of reoffense is in the very low range. Any risk she might pose in the future can be mitigated through structured supervision and treatment.

Ex. 1 at 17.

Dan Knoepfler agrees with Dr. Franklin's conclusions regarding Ms. Jordan's motivation and risk. He states:

> Ms. Jordan does appear to be a woman who sexually acted out to please men vs. having deviant arousal of her own. This drive to be wanted, needed, liked, and loved motivated her to engage in a variety of behaviors in order to avoid feeling abandoned. This included creating CSAM of her own child as well as engaging in alternative sexual behaviors.

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 7

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

Ex. 2 at 8. Mr. Knoepfler agrees Ms. Jordan is a low risk of reoffending, though he notes that "strong external" controls should be in place. *Id*. at 9. As discussed above, Ms. Jordan will have strong external controls for a very long time as a result of the term of supervised release this Court will impose.

While Ms. Jordan's eventual release is many years away, it is clear that she is committed to her rehabilitation. In her letter to the Court, she expressed "unfathomable sorrow" for committing this offense. Ex. 3. She plans to use her time in prison to better herself. She reports she is working toward her GED and plans to take "as many classes that [she] can," including parenting classes and the RDAP program. *Id*. She also recognizes that she must also work on her mental health issues. *Id*.

Ms. Jordan has reported similar plans to the people who support her. *See* Ex. 4. Ms. Jordan and her mother "have talked many times about [Ms. Jordan] signing up for many classes while she is incarcerated," and Ms. Jordan has told her mother that "she knows she messed up" and understands that she now has to "pay the consequences." Ex. 4 at 1–3. Ms. Jordan's friend, Devin Lowry, describes how Ms. Jordan "has already begun taking steps to improve herself and ensure she is able to turn her future around after her release." *Id*. at 4–5. Ms. Jordan has expressed to Mr. Lowry her profound "sorrow for her daughter, and disappointment in herself, in perpetuating this circle she wanted so badly to break." *Id*. Mr. Lowry also notes the effort Ms. Jordan is putting into getting the help she needs by going to "AA/NA meetings, attending church services," mental health treatment and even getting a job at the FDC." *Id*. Both her ex-husband, Michael Peppard, and her friend who is a fellow inmate at the FDC, Kylie Flores, wrote to express the potential they see in Ms. Jordan and her commitment to working on herself through classes and counseling to make sure she goes on to have a successful life. *Id*.

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 8

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

A sentence beyond ten years is unnecessary to deter Ms. Jordan. Initially, a ten-year sentence is a very long sanction, particularly for someone who has no criminal history. Furthermore, long prison sentences are unlikely to deter future crime, and a long term of imprisonment may have the opposite effect. This is borne out in the research:

> Imprisonment can be justified on the grounds of just deserts and incapacitation, but the criminological fact of null effect for custodial sanctions undermines any justification based on specific deterrence.

Damon M. Petrich, Travis C. Pratt, et.al., *Custodial Sanctions and Reoffending: A Meta-Analytic Review*, Crime and Justice, Vol. 20 at 353, 402 (2021).

### D.    A ten-year sentence would not create sentencing disparities.

The Presentence Report includes JSIN data for defendants sentenced under the same Guideline section and criminal history category. The median sentence in those cases is significantly longer than the recommendations in this case. Initially, the overwhelming majority of the cases in the JSIN database were committed for more typical reasons, such as a sexual interest in minors. The JSIN data simply ignores the unique facts about this particular offense and the characteristics of Ms. Jordan. Furthermore, the vast majority of people included in the JSIN data are male offenders who have a higher risk of recidivism.

According to the United States Sentencing Commission Interactive Data Analyzer, only three female defendants were sentenced in the Western District of Washington under USSG §2G2.1 between 2015–2024.[2] *See* https://ida.ussc.gov/analytics/saw.dll?Dashboard. The median sentence was 72 months. *Id*. Each defendant was given a sentence between five years and less than ten years. *Id*. Here, as a result of the mandatory minimum, Ms. Jordan is facing at least ten years of

---

[2] Each of the defendants in these cases were, like Ms. Jordan, in CHC I.

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 9

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

imprisonment—a sentence far longer than other similarly situated women from this district.

## IV. SUPERVISED RELEASE CONDITIONS

Ms. Jordan has no objection to a 15-year term of supervised release as recommended by the Probation Department. The defense, however, has the following objections to the proposed special conditions of supervised release:

Special Condition 1: This condition is duplicative of Special Conditions 2 and 4.

Special Conditions 6 and 7: Condition 6 prohibits contact with "any children" unless accompanied by an approved supervisory adult, and Condition 7 prohibits, in part, any contact with the victim without the approval of the probation officer. These conditions would impact Ms. Jordan's ability to have contact with her daughter. As noted in the Presentence Report, Child Protective Services is considering whether to allow Ms. Jordan supervised visits with her child. PSR ¶ 48.

Supervised release conditions must be narrowly tailored, particularly where the condition would infringe upon a fundamental right such as contact with the defendant's own child. *United States v. Wolf Child*, 699 F.3d 1082, 1095 (9th Cir. 2012). In *Wolf Child*, the Ninth Circuit struck similar conditions that required the defendant to seek his probation officer's approval before having contact with his children. *Id*. The defense acknowledges that the victim in *Wolf Child* was not the defendant's child, and, in this case, Ms. Jordan created and distributed a pornographic image of her daughter. However, the circumstances of this case are highly unique, and these particular conditions warrant careful scrutiny.

Ms. Jordan asks that Condition 6 be modified to allow contact with her child if approved by the Department of Children and Youth Services ("DCYF"). If DCYF eventually determines that Ms. Jordan can have unsupervised contact with her child

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 10

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

(either telephonically or in-person), it should be permitted under the conditions of supervised release.

Condition 7 should also be similarly modified. As written, Condition 7 would preclude any contact with her child, regardless of any determination by DCYF.

## V.    CONCLUSION

Ms. Jordan asks the Court to follow the recommendation of the parties and the Probation Department. This Court is required to impose the minimum term of imprisonment necessary to achieve the statutory goals of sentencing. 18 U.S.C. § 3553(a). Despite the high advisory Guideline range, a ten-year term of imprisonment sufficiently reflects the seriousness of the offense while also accounting for Ms. Jordan's brutal history of sexual victimization, alcoholism, and mental health issues.

DATED this 1st day of April 2026.

Respectfully submitted,

s/ *Dennis Carroll*
Senior Litigator
Office of the Federal Public Defender
Attorney for Larissa Jordan

MS. JORDAN'S SENTENCING MEMORANDUM
(*United States v. Jordan*, CR25-105-LK) - 11

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**